AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**

2/23/2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          VYC          DEPUTY

In the Matter of the Search of                          )
*(Briefly describe the property to be searched*          )
*or identify the person by name and address)*          )          Case No.   23MJ8104
                                                         )
Apple (Green)                                            )
Model: Unknown                                           )
IMEI: Unknown                                            )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-3, incorporated herein by reference.

located in the          Southern          District of          California          , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Robert Perez incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Robert Perez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
          telephone          *(specify reliable electronic means).*

Date:          02/23/2023          _____
*Judge's signature*

City and state:  El Centro, California          HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**                    Apple (Green)
                           Model: Unknown
                           IMEI: Unknown
                           Seized from Raul LAMAS-Macias
                           (Target Device)



The **Target Devices** are currently in the possession of the Department of Homeland
Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten
Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 19, 2022, up to and including January 19, 2023, and is limited to the following:

a.      tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.      tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.      tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.      tending to identify the user of, or persons with control over or access to, the Target Device;

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## AFFIDAVIT

I, Robert Perez, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**          Apple (Black)
             Model: iPhone
             IMEI: Unknown
             Seized from Jesus COVARRUBIAS
             **(Target Device)**

**A-2:**          Samsung (White)
             Model: A53
             IMEI: 352589/40/331595/1
             Seized from R.O.H
             **(Target Device)**

**A-3:**          Apple (Green)
             Model: Unknown
             IMEI: Unknown
             Seized from Raul LAMAS-Macias
             **(Target Device)**

**A-4:**          Motorola (White)
             Model: Edge
             IMEI: Unknown
             Seized from Oscar GARCIA-Gonzalez
             **(Target Device)**

as further described in Attachments A-1, A-2, A-3 and A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of Jesus COVARRUBIAS for transportation of illegal aliens R.O.H, Oscar GARCIA-Gonzalez and

1

Raul LAMAS-Macias (the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Device was seized from Jesus COVARRUBIAS on or about January 18, 2023, incident to the arrest of Jesus COVARRUBIAS. The Target Device is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.     I am a United States Border Patrol Agent and have been so employed since 2000.  I am currently assigned to the El Centro Station, and I am currently a member of the El Centro Sector Prosecutions Unit.  I am a graduate of the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia and a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.  I am authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants.  I have experience in and have received training with respect to conducting investigations of violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include

locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

9.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.      tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.      tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.      tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.      tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above

## FACTS SUPPORTING PROBABLE CAUSE

6.      On January 18, 2023, Border Patrol Agents assigned to the Calexico Station apprehended a silver colored 2006 Chrysler 300 that was being used to smuggle two illegal aliens into the United States. The driver of the Chrysler, Jesus COVARRUBIAS, an illegal alien from Mexico, as well as the front seat passenger, R.O.H also a 17-year-old juvenile illegal alien from Mexico were arrested during the smuggling event.

7.      On January 18, 2023, at approximately 8:08 p.m., the Calexico Border Patrol Station camera room received a telephone call from a Homeland Security Investigations Special Agent (HSI SA) Mitchell indicating he had observed two suspected illegal aliens, both wearing tan-colored clothing, board a silver 2006 Chrysler 300 east of the Grays Well Rest Area on Interstate 8 (I-8). The Gray's Well Rest Area is approximately 32 miles east of the Calexico, California Port of Entry.  The Agent stated the Chrysler was traveling westbound on I-8 toward the Gordon's Well exit. Prior to observing the suspected smuggling event, Agents were conducting surveillance of the Chrysler as part of an investigation.

8.      Simultaneously, the El Centro Sector Communication Center (KAK 840) also received a telephone call from an off duty El Centro Station BPA who relayed similar information about the Chrysler involved in a suspected smuggling event.  The station camera operators relayed this information via service radio to BPAs in the field and BPA J. Rodriguez responded.  At that time, BPA Rodriguez was wearing a full Border Patrol uniform and operating a marked Service Vehicle parked at the Gordon's Well overpass. When the Chrysler passed Gordon's Well, BPA Rodriguez entered I-8 behind it.

9.     Approximately one mile west of the Brocks Research Center Exit, BPA Rodriguez activated the emergency lights and siren of his Service Vehicle indicating for the Chrysler to stop.  The Chrysler failed to yield and continued westbound along I-8.  HSI SA Mitchell also activated the emergency lights and siren of his unmarked Service vehicle behind BPA Rodriguez. The Chrysler failed to yield to BPAs and Federal Agents for approximately 17.5 miles with speeds reaching 110 miles per hour.

10.     When the Chrysler passed the Bonds Corner Road Exit of I-8, Border Patrol Agent R. Alfaro deployed his service-issued Controlled Tire Deflation Device (CTDD) onto the roadway successfully in front of the Chrysler. At that time, BPA Alfaro was dressed in full Border Patrol uniform and operating a marked Service Vehicle. With the two front tires slowly deflating, the Chrysler continued westbound along I-8 at high speeds. The Chrysler reduced its speed only after the front tires completely tore off of the wheels. The Chrysler traveled for approximately 4.5 miles after the CTDD deployment until it finally stopped along the shoulder of I-8, approximately one mile west of the Anderholt Road overpass. At that time, BPAs Rodriguez and Alfaro, as well as HSI SA Mitchell approached the vehicle and gave commands to the driver, later identified as COVARRIBUAS, to get out of the vehicle. BPA Rodriguez attempted to open the driver's side door but it was locked. Agents observed that the windows of the Chrysler were covered in dark limousine tint and they could not see inside the vehicle. At that time, BPA Alfaro broke the driver's side window and observed that no one was in the driver's seat. BPA Rodriguez then broke the rear driver side window and observed all four occupants of the vehicle were in the rear seat.

11.     BPA Alfaro removed one individual, later identified as Material Witness Oscar GARCIA-Gonzalez, dressed in tan clothing over another set of clothes, from the rear seat. BPA Alfaro questioned GARCIA as to his citizenship and GARCIA stated he was a citizen of Mexico illegally present in the United States. GARCIA-Gonzalez was placed under arrest.  COVARRUBIAS, wearing a black colored t-shirt and black pants, then stepped out of the Chrysler and BPA Rodriguez took hold of him and placed him on the

ground behind the Chrysler. Supervisory BPA Mills, wearing a full Border Patrol uniform and operating a marked Service vehicle, arrived at that time and identified himself as a Border Patrol Agent. S-BPA Mills questioned COVARRUBIAS regarding his citizenship and COVARRUBIAS stated he was a citizen of Mexico illegally present in the United States. Agent Mills placed COVARRUBIAS under arrest and into the back of his Service Vehicle.

12.   BPA Rodriguez then returned to the Chrysler and removed another individual, later identified as Material Witness Raul LAMAS-Macias, dressed in tan clothing over another set of clothes, from the rear seat. BPA Rodriguez questioned LAMAS as to his citizenship and LAMAS stated he was a citizen of Mexico illegally present in the United States. BPA Rodriguez placed LAMAS under arrest.

13.   BPA H. Hacegaba, who had arrived on scene and was wearing a full Border Patrol uniform and operating a marked Service Vehicle, removed the last passenger from the Chrysler who was wearing a green jacket and blue jeans. This individual was later identified as R.O.H, a 17-year-old juvenile. BPA Hacegaba questioned R.O.H as to his citizenship and R.O.H stated he was a citizen of Mexico illegally present in the United States. Agent Hacegaba then placed R.O.H under arrest and into the back of his Service vehicle.   COVARRUBIAS, R.O.H and the Material Witnesses were transported to the Calexico Station for further processing.

14.   At the Border Patrol Station, COVARRUBIAS was advised of his Miranda rights.  COVARRUBIAS acknowledged his rights and agreed to make a statement without an attorney present.  COVARRUBIAS stated he is a citizen of Mexico and does not possess immigration documents that would allow him to be in the United States legally. COVARRUBIAS stated he currently lives in Mexicali, Mexico and was contacted by an unknown smuggler to pick up two people that were stranded in the desert. COVARRUBIAS stated he was given instructions via messages to drive to a location that was given to him and he drove from his home in Yuma, Arizona accompanied by his friend, R.O.H.  COVARRUBIAS stated he drove to the location where two illegal aliens were

waiting on the side of the road and the two illegal aliens boarded his vehicle. COVARRUBIAS stated the Chrysler belongs to him and he was given instructions to take the two illegal aliens to Calexico but did not know an exact location. COVARRUBIAS stated that when Border Patrol units got behind him, he became nervous and did not stop to their emergency lights and sirens. COVARRUBIAS stated he continued driving until he finally stopped his vehicle on the side of the road.

15. COVARRUBIAS stated that when Agents approached the Chrysler, he jumped into the backseat of the vehicle with the other passengers. COVARRUBIAS stated he was then placed under arrest by Agents. COVARRUBIAS stated he was not going to be paid but instead was threatened by an unknown person if he did not follow through with the instructions. COVARRUBIAS was presented with a Six Pack Photo lineup "B." COVARRUBIAS was able to identify Photo #2 as his friend who was in the front passenger seat. Photo #2 represents the minor, R.O.H.

16. Material Witness LAMAS provided a statement in the Spanish language. LAMAS stated that he arrived in Mexicali five days ago and made arrangements to be smuggled into the United States after arriving in Mexicali. LAMAS stated he was going to pay $2,000.00 once he crossed illegally into the United States and reached his final destination of Los Angeles, California. LAMAS was presented with Six Pack photo lineup "A" and "B." LAMAS was able to identify Photo #5 as the driver of the vehicle from lineup "B." Photo #5 represents Jesus COVARRUBIAS.

17. Material Witness GARCIA provided a statement in the Spanish language. GARCIA stated that he was to pay $50,000 Mexican Pesos to be illegally smuggled into the United States. GARCIA stated that he illegally entered the United States near Mexicali. GARCIA stated he was afraid, and he then put his seatbelt on. GARCIA stated he felt the vehicle driving at a high rate of speed. GARCIA stated the vehicle eventually came to a stop and the driver and front passenger both jumped into the backseat. GARCIA stated he was then placed under arrest by Agents. GARCIA was presented with Six Pack photo lineups "A" and "B." GARCIA was not able to identify anyone in the photo lineups.

18.     During the course of the event, four (4) cell phones were discovered. During a search incident to arrest of COVARRUBIAS, one black iPhone (Target Device #1) was discovered in COVARRUBIAS' front waistband. During a search incident to arrest of OSORIO, one white Samsung phone was discovered in OSORIO's the right front pants pocket (Target Device #2). A green Apple iPhone was discovered in the pants pockets of Material Witness LAMAS (Target Device #3) and was seized incident to his arrest. A white Motorola cell phone Model XT2143-1 was discovered in the pants pockets of Material Witness GARCIA (Target Device #4) and was seized incident to his arrest.

19.     Based upon my experience and investigation in this case, I believe that COVARRUBIAS, R.O.H., the Material Witnesses and other persons, as yet unknown, were involved in an alien smuggling venture and that COVARRUBIAS, R.O.H. and the Material Witnesses used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

20.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on December 19, 2022, up to and including January 19, 2023, the day after the arrest of COVARRUBIAS, R.O.H. and the Material Witnesses.

## METHODOLOGY

21.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

22.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone, and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

1   review, and, consequently, may take weeks or months.  The personnel conducting the

2   identification and extraction of data will complete the analysis within ninety (90) days of

3   the date the warrant is signed, absent further application to this Court.

4                                    **CONCLUSION**

5          24.     Based on all of the facts and circumstances described above, I believe that

6   probable cause exists to conclude that Jesus COVARRUBIAS used the Target Device to

7   facilitate the offense of alien smuggling.  The Target Device likely was used to facilitate

8   the offense by transmitting and storing data, specifically that described in Attachment B,

9   which constitutes evidence of violations of Title 8, United States Code, Section 1324.  I

10  also believe that probable cause exists to believe that evidence of illegal activity committed

11  by Jesus COVARRUBIAS, the Material Witnesses, and others continues to exist on the

12  Target Device. Therefore, I respectfully request that the Court issue this warrant.

14          I swear the foregoing is true and correct to the best of my knowledge and belief.



17                                    Robert Perez, Border Patrol Agent
                                      United States Border Patrol

19          Attested to by the applicant in accordance with the requirements of Fed. R. Crim.

20  P. 4.1 by telephone on this 23rd day of February, 2023.

22  _____ 3:30 p.m.

23  HON. LUPE RODRIGUEZ, JR.
    UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A-1
## PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Apple (Black)
Model: iPhone
IMEI: Unknown
Seized from Jesus COVARRUBIAS
(Target Device)



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Samsung (White)
Model: A53
IMEI: 352589/40/331595/1
Seized from R.O.H
(Target Device)



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-3**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**     Apple (Green)
       Model: Unknown
       IMEI: Unknown
       Seized from Raul LAMAS-Macias
       (Target Device)



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:


**A-4:**                    Motorola (White)
                           Model: Edge
                           IMEI: Unknown
                           Seized from Oscar GARCIA-Gonzalez
                           (Target Device)



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 19, 2022, up to and including January 19, 2023, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.